IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JEREMY JOHNSON, #1886485 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16cv704 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Jeremy Johnson, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims he is entitled to relief because his due process rights were violated and his counsel was ineffective. For the reasons stated below, and after due consideration, the Court will deny the petition.

## **PROCEDURAL BACKGROUND**

Petitioner is challenging his Hopkins County conviction for possession of a controlled substance with a deadly weapon, enhanced by two prior felony convictions. Cause No. 1323358A. A jury found him guilty as charged and he was sentenced to sixty years' confinement. On direct appeal, the Sixth Court of Appeals affirmed the judgment. *Johnson v. State*, 06-13-00227-CR, 2014 WL 4695063 (Tex. App. – Texarkana, Sept. 22, 2014). The Texas Court of Criminal Appeals ("TCCA") refused Petitioner's petition for discretionary review on February 11, 2015. It also denied Petitioner's state writ of habeas corpus without written order on June 15, 2016. *Ex parte Johnson*, No. WR-84,618-01, 2016 WL 4916824 (Tex. Crim. App. June 15, 2016). Petitioner filed the instant petition on September 13, 2016, asserting he is entitled to relief based upon both exhausted and

1

unexhausted or procedurally barred claims (unexhausted or procedurally barred claims appear in italics) as grounds for relief:

1. Petitioner's due process rights were violated when the trial judge communicated ex parte with the jury and allowed the jury to view the DVD - State's Exhibit #1

   a. *outside of Petitioner's presence.*

   b. *Petitioner and his counsel were denied the right to be present during a critical stage of trial, which amounted to constitutional error.*

   c. *Petitioner was denied his right to counsel during a critical stage of trial, amounting to structural error, and reversible under United States v. Cronic, 466 U.S. 648, 659 (1984).*

2. Petitioner's due process rights were violated when the trial court allowed the State to question a witness concerning her knowledge of Petitioner's parole status.

3. Petitioner's right to effective assistance of counsel was violated when counsel failed to object to the ex parte communication of the judge

   a. *and failed to object to Petitioner's exclusion from the courtroom during the jury's review of the DVD, marked as State's Exhibit #1.*

Respondent filed a response, asserting Petitioner's issues are procedurally barred and are without merit. Petitioner did not file a reply.

## FACTUAL BACKGROUND

The Sixth Court of Appeals provided the facts of the case in its opinion:

When the Hopkins County Sheriff's Office received a telephone call from Steven Coursey reporting that a tan 2004 Cadillac sedan with license plate number BN4V7110 was occupied by three white males and carrying a firearm and narcotics

in the area near Highway 1567 and Highway 11 East, Deputy Dennis Findley, among others, was dispatched to the area. Unable to locate the suspicious vehicle in the identified area, Findley personally called Coursey, who advised that the vehicle might be located at 1429 Church Street in Sulphur Springs. Coursey explained that the narcotics and gun were located in the trunk of the vehicle.

On learning this information, Findley drove to the Church Street address, but did not locate the vehicle. Findley then received a call from a fellow deputy that the suspicious vehicle was traveling on Pipeline Road. Findley soon spotted the vehicle at the corner of Pipeline Road and North Jackson Street, and he saw the vehicle head north on North Jackson Street towards Church Street. As the vehicle approached the intersection of Church Street and North Jackson Street, Findley observed the vehicle roll through the stop sign and continue north on Church Street. At that point, Findley activated the lights and siren on his patrol car. The tan Cadillac, which matched Coursey's description, pulled into the driveway of 1429 Church Street.

Based on the information that the vehicle was carrying a gun and narcotics, a felony traffic stop was initiated. Findley and his fellow officers at the location exercised extreme caution by approaching the vehicle with their service weapons drawn in a ready position. Robin Breckenridge, Johnson's mother and the driver of the tan Cadillac, was removed and handcuffed together with Johnson, who had been seated in the front passenger seat, and Brent Pelky, who had been seated in the back passenger seat.

When Findley removed Pelky from the back passenger seat of the car, he immediately noticed a "gun rug"—a pouch used for housing a gun—which confirmed the information he received from dispatch and from Coursey that a firearm was in the vehicle. After obtaining what he believed to be Breckenridge's consent to search the vehicle, Findley asked Ryan Haley, a K–9 handler for the Texas Department of Public Safety (DPS), to "run his dog" on the car. Thereafter, officers conducted a manual search of the vehicle, which uncovered methamphetamine and a .38 caliber handgun, both of which were concealed on opposite sides in the vehicle's trunk.

*Johnson*, 2014 WL 4695063, at *1.

## STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas

corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth" in the Supreme Court's cases. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Id.* at 948 n. 11. This presumption is especially strong where the trial judge and the state habeas judge are the same. *Miller-El v. Johnson*, 261 F.3d 445, 449, 454 (5th Cir. 2001) (citing *Clark v. Johnson*, 202 F.3d 760, 764, 766 (5th Cir. 2000)). A state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

## PROCEDURAL BAR

Section 2254 does not allow a petitioner to file a petition for writ of habeas corpus unless he is "in custody" and has exhausted his available state remedies. 28 U.S.C. § 2254(b)(1). A state prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist that render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b), ( c). To exhaust properly, he must "fairly present" all of his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In Texas, all claims must be presented to and ruled on by the Texas Court of Criminal Appeals ("TCCA"). *Richardson v. Procunier*, 762 F.2d 429, 430-31 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993). The exhaustion doctrine was judicially crafted on federalism grounds to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdiction and also to limit federal interference in the state adjudicatory process. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 489 (1973). If one or more of the petitioner's claims is exhausted and one or more of the claims is unexhausted, it is a "mixed" petition, and the entire petition may be dismissed for failure to exhaust state remedies. *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

Furthermore, if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default, federal review of that claim is procedurally barred. *Coleman*, 501 U.S. 722. Even if the state court explicitly invokes a procedural bar and alternatively reaches the merits of a claim, a federal court is still bound by the state procedural default. *Rocha v. Thaler*, 626 F.3d 815, 820-21 (5th Cir. 2010).

Additionally, petitioner must present his claims in a procedurally correct manner. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). "A procedural default . . . occurs when a prisoner

6

fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *citing Coleman*, 501 U.S. at 735 n.1.

In the instant case, Petitioner failed to exhaust: Issue 1a - the due process claim concerning the jury being allowed to view the DVD outside of Petitioner's presence; Issue 1b - the due process claim that Petitioner and his attorney were denied the right to be present during a critical stage of trial; Issue 1c - the due process claim that Petitioner was denied his right to counsel during a critical stage of trial under *Cronic*; and Issue 3a - the ineffective assistance of counsel claim that counsel failed to object to Petitioner's exclusion from the courtroom during the jury's review of the DVD.

These issues were not presented to the TCCA. If Petitioner were to present these claims now, they would be considered procedurally barred. *Id*. Petitioner's claims, thus, are also barred from federal habeas review under the federal procedural default doctrine. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995), *cert. denied*, 515 U.S. 1153 (1995) (the Texas abuse of the writ doctrine is an adequate procedural bar for purposes of federal habeas review). The procedural bar may be overcome only by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Id*.; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner fails to overcome the procedural bar by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Fearance,* 56 F.3d at 642. Accordingly, these claims are procedurally barred from federal habeas review.

Because Petitioner has presented at least one unexhausted issue, he has filed a mixed petition. While this petition could be dismissed in its entirety as a mixed petition, in the interest of justice, the Court will examine Petitioner's exhausted claims.

**DUE PROCESS**

The Due Process Clause provides the guarantee of fair procedure related to a constitutionally protected interest. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Due process guarantees that a government actor cannot deprive a person of a constitutionally protected interest in life, liberty, or property without adequate procedural protections. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 533 1985). The key to a procedural due process claim is whether the petitioner was afforded the quantity of process to which he was constitutionally entitled prior to the deprivation of a protected interest. *Id*.

Petitioner claims he was denied due process because of the trial court's ex parte communication with the jury and the court's agreement to allow the jury to view the DVD without Petitioner being present. There is no evidence showing that counsel objected to the communication, nor does Petitioner direct the Court to an objection. Accordingly, the alleged error is not preserved for review. The Supreme Court has held that the procedural default of a state defendant who fails to comply with the contemporaneous objection rule precludes federal habeas review of the claim, absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). The Court notes that Petitioner also failed to raise the issue on direct appeal. The rationale of *Sykes* applies when an issue is not raised on appeal. *Ford v. Strickland*, 696 F.2d 804k 816 (11th Cir. 1983) (applying *Sykes* allows a "dual advantage of discouraging defense attorneys from omitting arguments in preparing appeals with the intent of saving issues for federal habeas corpus consideration").

8

Petitioner failed to object and failed to show cause and prejudice for such failure; accordingly, the issue is procedurally barred from federal habeas corpus review.

The Court notes that Petitioner ultimately raised the claim on state habeas review, and the TCCA denied his petition without written order, which is an adjudication on the merits. *Torres*, 943 S.W.2d at 472. Petitioner is not entitled to relief for the additional reason that he fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Richter*, 562 U.S. at 97-98.

Petitioner also claims he was denied due process when the trial court allowed admission of extraneous offenses elicited by the State through impeachment testimony, which alluded to Petitioner's prior convictions and parole status. To be entitled to relief on this claim, Petitioner must show the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38. Federal habeas relief is not provided unless a petitioner establishes the error resulted in actual prejudice. *Id.* The appellate court considered this issue and found that the error did not have a substantial and injurious effect on the jury's verdict; accordingly, it did not violate Petitioner's constitutional rights. *Johnson*, 2014 WL 4695063. The appellate court provided an extensive and thorough examination of this issue:

> A. The Parole Status Evidence Was Inadmissible
>
> Johnson's girlfriend, Sarah Shirley, testified that the narcotics the officers discovered in the vehicle belonged to her. In light of this testimony, the State sought to elicit testimony from Shirley regarding her knowledge of the fact that Johnson was on parole in two different states. The State sought to elicit such testimony to impeach Shirley's testimony and to expose her motive for testifying that the drugs belonged

to her. Johnson's objection that the admission of evidence regarding his parole status was irrelevant and prejudicial was overruled. On appeal, Johnson contends the trial court erred in admitting this evidence. We agree.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Casey v. State,* 215 S.W.3d 870, 879 (Tex.Crim.App.2007). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

The trial court ruled that the testimony regarding Johnson's parole state was admissible under Rule 404(b) of the Texas Rules of Evidence to expose Shirley's motive for testifying. *See* Tex.R. Evid. 404(b). Rule 404(b) renders inadmissible evidence of the defendant's "other crimes, wrongs, or acts" designed to show that the defendant committed the crime charged in the indictment, but allows the admission of such evidence to prove the defendant's motive to commit the crime, among other things. Tex.R. Evid. 404(b); *see, e.g., Knox v. State,* 934 S.W.2d 678, 683 (Tex.Crim.App.1996); *Lopez v. State,* 288 S.W.3d 148, 165 (Tex.App.-Corpus Christi 2009, pet. ref'd); *Massey v. State,* 826 S.W.2d 655, 658 (Tex.App.-Waco 1992, no pet.); *Peterson v. State,* 836 S.W.2d 760, 762–63 (Tex.App.-El Paso 1992, pet. ref'd); *see also Hines v. State,* 269 S.W.3d 209, 214 (Tex.App.-Texarkana 2008, pet. ref'd).

In *Hines,* the State elicited testimony from the defendant's wife—for the proffered purpose of impugning her credibility—that the defendant had previously been imprisoned. *Hines,* 269 S.W.3d at 214. In recognizing that the trial court correctly found that this evidence was "incredibly prejudicial" and "absolutely objectionable," we rejected the State's purported justification for offering the evidence. We stated,

> The State attempts to justify the introduction of Hines's prior penitentiary stay by relying on the statement in *Moreno v. State,* 22 S.W.3d 482, 485–86 (Tex.Crim.App.1999), that even "unadjudicated crimes could be admissible to show a witness's bias or interest in the particular case." However, *Moreno* is easily distinguished because although the witness being impeached was the defendant himself, he had chosen to testify. Here, Hines had not testified and, indeed, never testified in his own behalf during the guilt phase of the trial.

*Id.* We further stated,

> "The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young v. State,* 159 Tex.Crim. 164, 261 S.W.2d 836,

837 (1953).

*Id.* Here, the trial court admitted the evidence regarding Johnson's parole status to prove Shirley's motive for testifying, not for the purpose of proving any motive on Johnson's part. Further, Johnson had not testified and never did testify on his own behalf during the guilt phase of the trial. The testimony here, as in *Hines,* was not admissible for any purpose, and its admission was error. *See Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (if extraneous offense evidence has no relevance apart from character conformity, then evidence absolutely [is] inadmissible under Rule 404(b)); *Hines,* 269 S.W.3d at 214; *see also* Tex.R. Evid. 404(b).

B. Harm Analysis

Having determined that the evidence was erroneously admitted, we must now decide whether its admission was so harmful as to require a new trial. The erroneous admission of an extraneous offense does not constitute constitutional error. *Higginbotham v. State,* 356 S.W.3d 584, 592 (Tex.App.-Texarkana 2011, pet. ref'd) (citing *Casey v. State,* 215 S.W.3d 870, 885 (Tex.Crim.App.2007)). Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's substantial rights. Tex.R.App. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nonconstitutional error is not grounds for reversal if,"'after examining the record as a whole,'" there is "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

In assessing the likelihood that the jury's decision was adversely affected by the error, we " 'consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case.'" *Motilla,* 78 S.W.3d at 357 (quoting *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

The State argues that the trial court "appropriately gave a limiting instruction at the time the evidence was admitted" and further notes that a written limiting instruction was included in the court's charge. These instructions advised the jury that the evidence regarding Johnson's parole status could only be considered for proof of motive of the testifying witness, and for no other purpose. This Court addressed a similar argument in *Jackson v. State,* 320 S.W.3d 873, 888 (Tex.App.-Texarkana 2010, pet. ref'd). In *Jackson,* the State introduced what was ultimately determined to

11

be inadmissible extraneous-offense evidence. *Id.* at 887. In analyzing the resulting harm, we concluded that the trial court's limiting instruction did not render the error harmless:

> As discussed above, the Kroger robbery should not have been admitted to prove either identity or intent in the pawn shop murder. Thus, the limiting instruction instructed the jury it could consider, albeit for a limited purpose, evidence it should not have considered. An instruction, which instructs a jury to consider inadmissible evidence for a limited purpose, still instructs a jury to consider inadmissible evidence. The evidence should not have been considered for any purpose during the guilt/innocence phase of the trial. The limiting instruction does not render the error harmless.

*Id.* at 888. Applying *Jackson's* reasoning to the facts presented here, the limiting instruction did nothing to ameliorate any harm caused by the error in admitting the evidence of Johnson's parole status.

We may also consider, in conducting a harm analysis, the presence of overwhelming evidence of guilt. *Motilla,* 78 S.W.3d at 357 ("[O]ur conclusion ... that overwhelming evidence of guilt is a factor to be considered ... applies to harm analysis conducted under the current rules."). In this case, Findley was advised by dispatch, and then directly by Coursey, that Johnson was carrying drugs and a gun in the trunk of his Cadillac on the day of Johnson's arrest. Coursey testified that he worked with Johnson at Summit Energy in Como for two or three months. Coursey and Johnson worked in a barn located in a pasture that passed as a paint shop. Coursey explained that he was on community supervision and was "just tired of being around all the dope." So, on the day of Johnson's arrest, he called the sheriff's office to tell them Johnson had a large quantity of narcotics that day, as well as a gun. According to Coursey, Johnson, Johnson's brother Michael, and Pelky, who also worked at Summit, would bring methamphetamine to work every day where they would smoke it and sell it to "people who would pull up at the shop." On the day he called the sheriff's office, Coursey was offered a chance to purchase some of the methamphetamine, which was located in the vehicle's trunk. At trial, Coursey identified a photograph of the .38 caliber handgun that he saw in Johnson's car at work.

Findley located Johnson's vehicle in the area described by Coursey and, on searching the car, found methamphetamine and a .38 caliber handgun in the trunk in accordance with Coursey's description of their location. Photographs of Johnson were discovered on a cell phone found in the car, one of which was saved under the description "me" in the phone's contacts list. This same phone contained pictures of a Dallas Cowboys money clip and a black headband around another large sum of money. The cash discovered on Johnson at the time of his arrest was packaged in the same manner as

12

the money depicted on the cell phone. Another photograph saved on the cell phone depicted a digital scale and a substance described as methamphetamine. The digital scale in the photograph was the same brand as the scale found with the methamphetamine in the trunk of Johnson's car at the time of his arrest.

This evidence, standing alone, is substantial and compelling evidence of Johnson's guilt. The sole evidence that the drugs did not belong to Johnson came from Shirley, who testified that she lived with Johnson and hid the methamphetamine in the trunk of the Cadillac for her own use. Although Shirley told Findley on the day of Johnson's arrest that the methamphetamine was hers, she could not tell Findley where the drugs were located because, according to her, she was high. Shirley explained that, because she was no longer employed and could not afford health insurance, she was using the methamphetamine to self-medicate for anxiety. Shirley also admitted to having a conversation with Johnson, after his arrest, in which he told her to say the drugs were hers. At one point during her testimony, Shirley claimed methamphetamine she disposed of inside of the house belonged to Pelky. Shirley then testified that the drugs belonged to her. Shirley admitted to being untruthful on the witness stand.

The trial court, addressing Johnson during the punishment phase and expressing concern and dismay regarding Shirley's testimony, stated,

> And, in fact, the idea that you would allow Ms. Shirley to get on that stand and do what she did—the reality is, there probably isn't anybody on planet earth that believed for a moment that those were hers and you had no knowledge of them. There's probably nobody on planet earth that believed that, that she clearly was taking the fall for you. And that's disturbing.

The trial court's assessment of Shirley's testimony as incredible is telling. We do not believe this evidence does anything to counteract the strength of the State's evidence of Johnson's guilt. The compelling nature of the evidence of guilt weighs in favor of a finding that the trial court's erroneous admission of testimony regarding Johnson's parole status did not influence the jury, but this is not the sole factor in our analysis.

In addition to evidence of guilt, we are to assess "'the character of the alleged error and how it might be considered in connection with other evidence in the case.'" *Motilla,* 78 S.W.3d at 357 (quoting *Morales,* 32 S.W.3d at 867). Here, the character of the evidence of Johnson's parole status weighs in favor of a finding of harm. "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson,* 320 S.W.3d at 889.

> In considering how the erroneously admitted evidence might be considered in connection with other evidence in the case, the emphasis by the State should be considered. *Id.* at 890. The State's emphasis of the testimony that Johnson was a parolee was minimal, and when considered in connection with the other evidence, this testimony was very brief. Shirley's testimony regarding Johnson's parole status consisted of only twenty-two lines in a multi-volume record. *Compare DeLeon v. State,* 77 S.W.3d 300, 316 (Tex.App.-Austin 2001, pet. ref'd) (finding admission of extraneous-offense evidence harmful where "[m]ore time was spent developing the extraneous wrongdoing than proving the ultimate issues alleged in the indictment"). The State never inquired into the underlying facts concerning the conduct that resulted in Johnson's parole. Johnson's parole status was mentioned on two occasions during closing argument. The first such mention was made by defense counsel. Likewise, the State mentioned Johnson's parole status only once in closing argument.
>
> Because the trial court overruled Johnson's objection, no instruction to disregard was given by the trial court to alleviate any harm. Nevertheless, the bulk of the testimony at trial concerned Johnson's alleged possession of methamphetamine, not his status as a parolee. While the character of the evidence regarding Johnson's parole weighs in favor of a finding of harm, the remaining factors favor a finding that the error did not result in harm. Given the relatively modest, unembellished testimony on this issue and the overwhelming evidence of Johnson's guilt, we have a fair assurance that the error did not influence the jury or had but a slight effect in its determination that Johnson was guilty of the charged offense.

*Johnson*, 2014 WL 4695063, at *6-10.

As the last reasoned state court opinion, the appellate opinion is entitled to deference. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Petitioner presents the same issue he raised on appeal and his PDR, but fails to demonstrate that the admission of his parole status had a substantial and injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 637-38. Moreover, he fails to show how the state court's adjudication of the claim was unreasonable. *Richter*, 562 U.S. at 97-98.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner also asserts he is entitled to relief because his counsel was ineffective. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional

14

norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The reviewing court must give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697.

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. "If the standard is difficult to meet, that is because it was meant to be." *Id*. at 102; *see also Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013).

Petitioner claims counsel was ineffective when he failed to object to the trial judge's ex parte communication with the jury. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such

15

a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

Petitioner alleges counsel should have objected to the judge's *ex parte* communication with the jury. He claims counsel's failure allowed his due process rights to be violated. The Supreme Court provided several reasons why ex parte comunications should be avoided in *United States v. U.S. Gypsum, Co.*, 438 U.S. 422 (1978) (unpredictable direction a conversation might take, the risk that a juror will unwittingly provide misstatements of the law, and the absence of counsel and unavailability of a transcript aggravate the problem of having one juror serve as a "conduit"). To determine whether a constitutional violation occurred as a result of an ex parte communication, the Supreme Court has held that a reviewing court should balance the defendant's fundamental right to be present with society's interest in the administration of criminal justice. *See Rushen v. Spain,* 464 U.S. 114 (1983). When an ex parte communication occurs in some aspect of the trial, the trial judge generally should disclose the communication to all parties. *Id*. at 119. There is no automatic presumption of harm, however, just because an ex parte communication occurred. *Id.* at 133.

In this case, there was a DVD containing footage from the police officer's dash cam. Portions were shown during the trial, but certain portions were muted because it was determined some of the evidence on the DVD was inadmissible. The jury requested to review the DVD during its deliberations. Acknowledging the inherent problems with showing only portions of the DVD, the judge said, "I'm not real sure how we're going to do that. It may just be that we have to play the whole thing in its entirety." The judge recalled what he had done in a similar situation – he instructed a jury that they would play the recording in the presence of the attorneys, but instructed them not to deliberate while he and the attorneys were in the room. After both parties agreed this plan was appropriate to the current circumstances, the judge spoke with the jury foreman to determine if the jury wanted to see a portion of the DVD or the entire DVD. The foreman told the judge that the jury wanted it played in its entirety. The judge disclosed this information to both parties in accordance with *Rushen*. This was the extent of the communication. The judge stated on the record that the attorneys for both sides would be present and the prosecutor would run the video, just as when it was published to the jury during trial. Portions of the DVD would be muted, as in trial.

There is no evidence that the communication between the judge and the jury concerned anything other than what was placed on the record. There is nothing to show that the judge inadvertently provided his subjective, personal views, or created a risk of misunderstanding or misinterpretation of the law as shown in *United States v. Peters*, 349 F.3d 842 (5th Cir. 2003) (judge provided his subjective personal views to return a verdict, created a risk of misunderstanding and misinterpretation of the law, and counsel was not present). There was no objection to the ex parte communication or to the jury reviewing the DVD. Petitioner's speculative and conclusory

17

allegations are insufficient to entitle him to relief. *Koch v. Puckett*, 907 F.2 524, 530 (5th Cir. 1990). Petitioner raised this issue in his state writ of habeas corpus, and the TCCA denied the writ. This ruling is entitled to a presumption of correctness. Petitioner fails to overcome the presumption of correctness with clear and convincing evidence. *Valdez*, 274 F.3d at 947.

In sum, no harm was established by the judge's ex parte communication to the jury. Accordingly, Petitioner fails to show that counsel was ineffective for failing to object to the communication. The judge followed proper procedures by disclosing what was said to both parties. *Rushen*, 464 U.S. at 118-19. The Court also notes that Petitioner was not entitled to be present for the viewing of the DVD as this was part of the jury's deliberations. Petitioner fails to show that, had counsel objected, the court would have sustained the objection and that it would have changed the outcome of the trial. *Strickland,* 466 U.S. at 694. Petitioner fails to show the TCCA's denial was objectively unreasonable under th AEDPA. *Richter*, 562 U.S. at 97-98.

## EVIDENTIARY HEARING

Finally, Petitioner requests an evidentiary hearing. However, his claims were adjudicated on the merits in state court and he fails to satisfy the requirement of 28 U.S.C. § 2254(d)(1). The Supreme Court has held that a federal court's evaluation of a state court decision:

> is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Because the TCCA denied Petitioner's state writ on the merits, this Court's review must be limited to the record. *Singleton v. Johnson*, 178 F.3d 381,

384 (5th Cir. 1999). The Court also recognizes that a concurrence was issued concerning Petitioner's ineffective assistance of counsel claims, which includes his underlying due process claim. The concurring opinion states that Petitioner "has presented nothing more than a frivolous or facially non-meritorious claim." (Dkt. #11-16). The concurrence concluded by stating that, after considering the pleadings liberally and the complaints based on their substance, Petitioner had not presented "any colorable ineffective assistance claims." *Id.*

Petitioner's claims do not rely on a new rule of constitutional law, or a factual predicate that could not have been previously discovered, and the facts underlying the claims were not sufficient to establish that no reasonable fact finder would have found Petitioner guilty, but for constitutional error. 28 U.S.C. § 2254(e)(2). Petitioner fails to show he is entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under § 2254 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, the Court will address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained

the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the Petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, Petitioner is not entitled to a certificate of appealability.

It is therefore **ORDERED** the petition for writ of habeas corpus is **DENIED**, and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are **DENIED.**

**SIGNED this 27th day of September, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE